E. CONERY *v.* R. A. CLARK, Owner of Steamer R. L. Cobb—DYAS & Co. *v.* Same—JOHN YEATMAN *v.* Same.

A seizure made under a judgment against a simulated purchaser of a steamboat, the creditor being aware of the simulation, will not have a preference over attaching creditors who proceed against the real owner of the boat.

A party who suffers a boat to be registered in his name, and thus holds himself out to the world as a real owner, cannot claim as regards the debts of the boat to be in any better position, than if he was the real owner.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J. *Hunton & Miller,* for appellants. *Collins & Wooldridge,* for appellees.

BUCHANAN, J. An appeal is taken, on motion, by *Dyas,* another by *Yeatman,* from a judgment of distribution of the proceeds of a steamboat. There were a great many claimants for wages, materials, supplies, &c., but the appellants only named in their appeal bond, as obligees, the following parties, *E. Conery, Cobb, Wood & Co., Bryan & Robinson, R. Yeatman & Co.* and *R. G. Kyle & Co.*

A motion is now made for the dismissal of the appeals on the ground, that a number of other parties to this concurso have not been made parties to the appeal. On examination of the record, we find that those parties are not interested in maintaining the judgment which is appealed from. That judgment allots the whole fund arising from the sale of the steamboat, to the obligors above named, in preference to the other claimants. Under that judgment, therefore, the parties named in this motion to dismiss, are entitled to nothing, and, consequently, will lose nothing by its reversal.

Rule dismissed.

COLE, J. This is an appeal from a judgment of distribution of the proceeds of sale of the steamboat R. L. Cobb.

The correctness of the different claims is not contested; the only question is to the privilege and rank of the creditors, in the distribution of the funds in the hands of the Sheriff.

*Dyas & Co.* and *John Yeatman* have appealed; they contest only the precedence of rank allowed over them to *E. Conery, Cobb, Wood & Co.* (assignees of *Shaw & Zunts*), *R. Yeatman & Co., R. G. Kyle & Co.* and *Bryan & Robinson.*

It appears that *Lewis Northern* built the steamboat for account of himself and *Kelly & Co.,* and at the time of the seizure was master and owner of three-fourths thereof.

She was registered by *Northern* in the names of *R. L. Cobb* and *J. B. Evans* of Kentucky, as owners, to protect her, as is alleged, from certain old debts then existing against *Northern,* of which *Dyas & Co.,* a part of the present appellants, held one.

Afterwards, the boat becoming embarrassed with debts, and *R. L. Cobb* and *Evans,* desiring to relieve themselves from the liabilities which they had incurred, and were incurring as registered owners, sent their agent, *G. L. Cobb,* to New Orleans, with plenary power to change the registry and to take care of their interests.

Accordingly, on the 14th of March, 1856, *G. L. Cobb* passed the title to the
40

boat to *R. A. Clark*, a young man without means, an out-door clerk of *R. Yeatman & Co.*, who paid nothing for the boat and took no control over her.

The testimony establishes that this sale to *Clark* was a mere simulation, and that the object of the transfer, as is admitted by *G. L. Cobb*, " was merely to get the title out of *Cobb* and *Evans*."

On the day succeeding this transfer, *Conery*, the plaintiff, instituted suit against *Clark* for $3,500, on a note or due-bill given by *Northern* on account of the boat.

Judgment was immediately confessed by *Clark*, and to this judgment *G. L. Cobb* was subrogated.

In each of the other cases of the appellees, before this court, *R. A. Clark* confessed judgment, and in each case *G. L. Cobb* was subrogated by order of court, except in the case of *Cobb, Wood & Co.*

It also appears from the testimony, that *G. L. Cobb*, in taking a subrogation of the several judgments in favor of the appellees, was acting for his brother, *R. L. Cobb*, and that in reality *R. L. Cobb*, and not *G. L. Cobb*, was the party subrogated.

As *R. L. Cobb* was registered as an owner of this boat, his payment of these debts through his agent, *G. L. Cobb*, prior to the judgment of distribution, must be considered as having been made for the benefit of the boat ; and his payment thereof extinguished these debts, and as the subrogations were entered of record prior to the distribution, the judgment of the District Court was in favor of parties whose debts had already been paid, who had no further interest and was, therefore, erroneous.

The claim of *Cobb, Wood & Co.*, who sue as assignees of *Shaw & Zunts*, was not privileged, for it accrued more than sixty days before the seizure.

The claims of the other appellees do not appear to have been privileged as against this boat, not having accrued within sixty days before the seizure, or not being of privileged character.

These debts not being a privilege, could only be legally enforced by suit against the owners of the boat; and when *G. L. Cobb* for *R. L. Cobb* paid these claims, he became the creditor of the owners of the boat for so much money paid. Neither he nor the appellees had a right to proceed against the boat itself, for debts not privileged.

It appears, also, that the appellees must have known they were proceeding against a simulated purchaser, when they sued *Clark*, for *Giles Cobb* admits, that these suits were instituted and the judgments confessed by *Clark* at his " instigation."

The evidence thus shows, that *R. L. Cobb*, by his agent *G. L. Cobb*, made a simulated transfer of title to *R. A. Clark*, procured suits to be brought against *Clark* on debts he did not owe (for *Clark*, even as a *bona fide* purchaser would not be liable for debts not privileged, and which were created before his purchase,) caused *Clark* to confess judgments with privilege on property he did not own, and for debts which he did not owe, and now by virtue of such judgments demands the proceeds of a steamboat which belonged to *L. Northern* and *Kelly & Co.*

We are of opinion that *R. L. Cobb*, by paying the unprivileged debts held by the appellees against the owners of this boat, became the ordinary creditor of said owners, *Northern* and *Kelly & Co.*, for the amounts so paid, and that the attachments sued out by the appellants gave them a privilege upon three-fourths of the fund in court : that being *Northern's* interest.

We would here remark, that none of the appellees *attached* the boat; but that they seized it under executions issued by virtue of their said judgments, and we are of opinion that judgments against a simulated purchaser, when the judgment creditors were aware of the simulation, ought not to have a preference over attaching creditors who proceed against the real owner of the boat.

We are also of opinion, as *R. L. Cobb* was one of the registered owners of the boat and liable *in solido* for its debts, that when he paid the judgments of *Conery* and others, then the debts of the firm that owned the boat to that amount were extinguished, and as no debts of the partnership having a superior claim to the attaching creditors, who are appellants, remain, the individual creditors of one of the real owners, *Northern*, are entitled to be paid.

We would also observe, that *Northern & Co.* were the real owners of the boat, and *R. L. Cobb & Co.* the registered owners, and it was by their consent and to their knowledge that they were so registered.

They being registered as owners were responsible for the debts, and when one of the registered owners pays the debts of a boat, he must be considered to have paid them for the firm of which he is a member, as the owners of a steamboat are bound *in solido*. And so far as creditors are concerned, the real owner, and the one registered as owner, by his knowledge and consent must be considered as equally liable and as constituting one firm.

It may be unfortunate for *R. L. Cobb* to be rendered liable, but he put himself in this position by being registered as owner, and he ought to suffer rather than innocent creditors.

*R. L. Cobb*, being a registered owner, cannot claim to be in any better position than if he was the real owner. If he had been the real owner and had paid the debts, then the partnership debts for that amount would have been satisfied; the same result must follow on the ground that he is a registered owner and holds himself thus out to the world as a real owner. The adverse doctrine would induce collusion between the registered and the real owner, and the registered owner would conceal or disclose his real position, as it might enable the real owner to defraud his creditors.

If the controversy as to the subrogation was between *Northern*, one of the real owners, and *R. L. Cobb*, one of the registered owners, then the subrogation might entitle *R. L. Cobb* to be paid, for, as we before observed, he became by the subrogation the ordinary creditor of the real owners, but he cannot claim to be paid in preference, when the controversy is between the individual creditors of *Northern* and *R. L. Cobb*, who has been subrogated to the rights of judgment creditors of the boat; for these judgments must be considered as extinguished the moment they are paid by *R. L. Cobb*, and he cannot be allowed a preference on account of the payment, for he was responsible as registered owner.

It is objected that the individual creditors of *Northern* cannot be paid out of the assets of the partnership until the partnership debts are satisfied.

But no debts of this character having priority over the appellants, who are attaching creditors, are shown to exist; and besides, this objection comes with a bad grace from appellees, for appellants are, it is true, suing one of the partners only, but the appellees are suing neither of them but *R. A. Clark* only.

It is also objected, that the testimony of *Northern* ought not to have been received, but it was taken without objection, and besides, it could not legally have been excluded.

With relation to the two appellants, we would observe that *John Yeatman* is

CONERY
v.
CLARK.

entitled to have his claim first satisfied out of the fund in court, as his attachment was prior to that of *Dyas & Co.*

It is, therefore, ordered, adjudged and decreed, that the judgment be amended as follows, to wit: That *John Yeatman*, one of the appellants, shall recover from *Lewis Northern* two thousand dollars, with five per centum interest thereon from the 15th of October, 1855, and that *Dyas & Co.*, appellants, recover of *Lewis Northern* sixteen hundred and two dollars and thirty-seven cents, and the said *Yeatman* is declared to have the priority over said *Dyas & Co.*, and shall have his said claim first satisfied out of two-thirds of the fund in court, and the said *John Yeatman* and *Dyas & Co.* are decreed to have a privilege on two-thirds of the proceeds of the sale of the steamboat R. L. Cobb; and it is further ordered, adjudged and decreed, that said *John Yeatman* first, and said *Dyas & Co.* second, shall be paid their said claims out of said two-thirds of said fund, proceeds of said steamboat, in preference to the judgments of the appellees, *E. Conery, Cobb, Wood & Co.*, (assignees of *Shaw & Zunts*,) *R. Yeatman & Co., Bryan & Robinson*, and *R. G. Kyle & Co.* And it is ordered and decreed, that the judgment in all other respects remain undisturbed and be affirmed, and that the costs of this appeal be paid by said appellees.

Mr. Justice VOORHIES took no part in this decision on account of indisposition.

SPOFFORD, J., dissenting. The enrolment of ships and other vessels is made necessary for revenue purposes and with a view to what may be called the police of the seas and rivers. There is no important analogy between these regulations and State registry laws, intended to give notice of titles to lands and slaves. A steamboat is personal property; the boat herself responds for her debts, and all her real owners, engaged in the business of carrying freights and passengers for hire, are bound *in solido*, under the Louisiana Code, for her debts. I say her *real* owners are so bound, whether the enrolment is in their name or not; and one who is not a real owner or part owner, is not *necessarily* and in all cases bound, in his personal capacity for her debts, although he permit the vessel to be registered in his name.

This is settled by authority. " The registry of a ship is not of itself evidence of property, except so far as it is confirmed by some auxiliary circumstance showing that it was made by the authority or assent of the person named in it, and who is sought to be charged as owner. Without such connecting proof, the register has not been held to be even *prima facie* evidence to charge a person as owner; and *even with such proof*, it is not conclusive evidence of ownership; for an equitable title may well consist with the documentary title at the customhouse in another." 1 Green. Ev. § 494.

Now, the appellants' whole case rests upon this very principle: that the enrolment is not proof of ownership; they allege and contend they have proved, that *R. L. Cobb* (formerly registered as part-owner) was no part-owner, and that he had no interest whatever in the boat, which belonged entirely to *Lewis Northern* and *Kelly & Co.*, in whose names she was never registered. Be it so. Then it follows, by their own allegations, that *R. L. Cobb* was not bound for the debts in his individual capacity; not being bound for the debts, he could buy them and take a valid conventional subrogation to the rights of the creditors; he did so; the appellants frankly admit that the claims of the seizing creditors to which *R. L. Cobb* has been subrogated of record, were just debts of the real owners of the boat; under these claims, the boat has been seized and sold; the seizure invested these creditors with a right of priority upon the proceeds; by claiming a

portion of the proceeds themselves, the appellants affirm the Sheriff's sale ; so that the only question is, could *R. L. Cobb* lawfully buy up the just claims of *E. Conery, Bryant & Robinson*, and others, then pending in court, and take a subrogation to the rights which they had acquired by their seizure.

I am of opinion that he could ; that there was no *fraudulent* simulation ; that the whole purpose of the nominal changes of title in the boat was to secure just debts incurred in running her by her real owners, *Northern*, and *Kelly & Co., in solido*, and for which the boat was primarily liable ; that no creditor of *Northern* has been deceived or defrauded thereby ; and that to allow *Northern*, who seems to have occasioned all the difficulty, to pay off his personal creditors out of the proceeds of the boat, to the detriment of those who have paid the solidary debts of the owners, would be to allow him to perpetrate a fraud successfully ; while, at the same time, it would be punishing an innocent man for a simulation which the law does not reprobate, because it was harmless and had only for its effect the protection of creditors to whom equity and even the law itself would have given the prior rights.

The appellants should not be permitted to take the double position that *R. L. Cobb* was owner and was not owner. They must elect and abide by their election. Whichever theory they embrace will be fatal to their claim.

But, even upon the reasoning that his letting the registry stand partly in his name, must, by a sort of primitive construction, be held to bind him *with or for the owners* for their debts, then, upon paying those debts, *R. L. Cobb* was subrogated *ipso jure* to their rights as seizing creditors, and he still has the first claim, for their seizure was first. C. C. 2157.

And again, if he is to be assimilated to a *partner* for participating in a simulation which was not fraudulent, even then the case of *Purdy* v. *Hood*, 5 N. S., would by analogy protect him.

In the language of Mathews, J., in that case, " *a partner* who pays the partnership debts must be considered in the same situation with *any other creditors of the partnership*, and have a claim on its funds *in preference to creditors of the partners individually*."

I think the decree of the lower court does justice, without infringing the law.

---

## SAME CASE—ON RE-HEARING.

COLE, J. We can perceive no error in the judgment heretofore rendered by us, except a clerical mistake in decreeing that appellants shall have a privilege on two-thirds of the fund in court instead of three-fourths.

It is, therefore, ordered, adjudged and decreed, that our former judgment be set aside and annulled ; it is further ordered, adjudged and decreed, that the judgment of the lower court be amended as follows, to wit : that *John Yeatman*, one of the appellants, shall recover from *Lewis Northern* two thousand dollars with five per centum interest thereon from the 15th of October, 1855 ; and that *Dyas & Co.*, appellants, recover of *Lewis Northern* sixteen hundred and two dollars and thirty-seven cents ; and the said *Yeatman* is declared to have the priority over said *Dyas & Co.*, and shall have his said claim first satisfied out of three-fourths of the fund in court ; and the said *John Yeatman* and *Dyas & Co.* are decreed to have a privilege on three-fourths of the proceeds of sale of the steamboat *R. L. Cobb* ; and said *John Yeatman*, first, and said *Dyas & Co.*, second, shall be paid their said

claims out of said three-fourths of said fund, proceeds of said steamboat, in prefer-
ence to the judgments of the appellees, *E. Conery ; Cobb, Wood & Co.*, (assignees
of *Shaw & Zunts*) ; *R. Yeatman & Co.; Bryan & Robinson*, and *R. G. Kyle & Co.;*
and it is ordered and decreed, that the judgment of the lower court in all other
respects remain undisturbed and be affirmed, and that the costs of this appeal be
paid by said appellees.