## No. 12,636.

### SOLOMON REINACH AND SANTO OTERI VS. NEW ORLEANS IMPROVEMENT COMPANY, LIMITED.

50   497
52   1522
52   2048
50   497
113   247

A tax sale based on assessments against the recorded owner holding under titles conveying ownership bind all previous owners by whose acts or acquiescence such titles are placed on the public records, thus becoming guides for the assessors.

One who witnesses an act of sale is precluded from afterward asserting title to the property against the purchaser who accepts the conveyance in part on the faith implied by the witness' signature. Bigelow on Estoppel, p. 451.

An act of sale absolute in form, though the real consideration be the indebtedness of the vendor to the purchaser, binds the vendor as effectively as if the price was paid in cash.

APPEAL from the Civil District Court for the Parish of Orleans. Théard, J.

32

*Benjamin Ory* for Plaintiffs, Appellees.

---

*Carroll & Carroll* for Defendant, Appellant.

---

Argued and submitted March 7, 1898.
Opinion handed down April 4, 1898.

---

The opinion of the court was delivered by

MILLER, J. The defendant appeals from the judgment condemning it to pay plaintiffs one-half the price of property bought by them under the agreement for the purchase on the joint account of the plaintiff and the defendant.

Under this agreement for the purchase of the property on joint account, the plaintiffs became the purchasers, but objected to the title tendered, and refused to pay the price. This led to the suit against the plaintiffs to compel compliance with their purchase, in which suit the objections to the title were deemed insufficient by this court, and plaintiffs were held bound to take the title and pay the price. Savings Bank in Liquidation, 48 An. 1428. Thus compelled to pay, the plaintiffs bring this suit for one half the amount paid, for which they claim defendant is bound by the agreement under which the property was purchased.

The petition avers the agreement with the defendant to buy the property on joint account, that plaintiffs have paid the price under the judgment condemning them to take the title, and claims that defendant be decreed to pay one-half the price according to its agreement. The answer is the general issue, with the defences of defects in the title, and that defendant, no party in the suit, resulting in the judgment condemning plaintiff to accept the title, is not bound by that judgment.

We are inclined to think defendant is bound by the judgment condemning plaintiffs to take the title. When that suit was brought the purchase had been made in plaintiff's name; under the agreement they were to buy on joint account with defendant. Plaintiffs defended the suit for the joint account. The suit against plaintiffs was of some months' duration. The defendant claims it had no notice of that suit. In the statement of facts it is admitted the president and attorney

of the defendant company would testify they were not notified. On this question of notice in addition to the pendency of the suit for months affecting defendant's liability brought against and defended by the associate of the defendant in the purchase, there is the testimony that one of plaintiffs communicated with the president of the company in reference to the suit and its defence. Against this testimony there is only the admission the president and attorney would testify they had not been notified.    Under our jurisprudence *res judicata* prevails although the party resisting that exception was not a party to the record, if in point of fact identified in interest with the defendant, he assents to the defence for both, by the defendant who is sued, and the assent may be implied.   Johnson vs. Weld, 8 An. 126.   After that defence has failed, it seems to us, under the circumstances of this case, the defendants are not free to dispute their share of the liability arising from their agreement to buy the property on joint account, and after their associate in the agreement has been compelled to pay the whole price of which defendant was to bear one-half.

But we have considered the defences to the title, the defendants contend were not passed on in the suit to compel plaintiffs to accept the title.   The property, it is conceded, belonged to J. Q. Bailey, and by conveyances from a number of parties claiming to be his heirs, was sold to John W. Bailey, by acts dated one in 1845 and another in 1859.   John W. Bailey conveyed to Warner Van Norden in 1868.   Under two assessments against Van Norden, the property was sold for taxes in 1876; then conveyed by the tax sale purchaser to the president of the Louisiana Savings Bank and his acquisition has been adjudged against him, to have been for the bank.   Raymond vs. Palmer, 47 An. 786.   The plaintiffs hold by sale from the bank. The alleged defects are, that in these earlier conveyances from the Baileys to John W. Bailey, there is no proof of the heirship of his vendors; besides some of the titles are not in authentic form and the [signatures are not proved, and further the acts, it is insisted, nominally on sales, are in the common law form of a nominal consideration, and love or affection and hence to be deemed donations liable to reduction in the event that these vendors of 1845 and 1859, should leave forced heirs.   Van Norden's title is alleged to be defective, because his wife living in 1876 died subsequently; that Guthrie, the purchaser at the tax sale, acquired for Van Norden,

conveyed to Palmer for the bank at Van Norden's request; and it is claimed the bank held the title not absolutely but only to secure the indebtedness of Van Norden, hence the ownership continuing in him, it is insisted, at his wife's death, the title to one half vested and is now in her hair.

We think the defects supposed in the title of John W. Bailey, the vendor of Van Norden, whatever their intrinsic force or weakness, must be deemed removed by the tax sale of 1876. The titles of all previous owners became merged by their own acts and long acquiescence in John W. Bailey. For all purposes of taxation he stood the recorded owner. The tax sale on the assessments against him bound previous owners as it bound him, unless for defects neither alleged or proved in the tax sale. Any subsequent purchaser could successfully urge the tax sale against any claim of the Baileys if there were any basis for such claims.

The bank holds under the tax title to Guthrie; Van Norden witnessing the act, an estoppel against him from ever disputing the conveyance. Bigelow on Estoppel, p. 451. It is claimed in the argument that Guthrie was only a nominal owner purchasing for Van Norden, and at his request conveying to the bank. Whether nominal or not Van Norden, the owner against whom the taxes are assessed, is bound by the conveyance to the bank. It is claimed, too, that the conveyance to the bank was to secure Van Norden's indebtedness. Raymond vs. Palmer, 47 An. 786. It was none the less an absolute transfer, and we know no reason why the act does not avail as a sale, because the real consideration was an indebtedness to the purchaser. This conveyance by Guthrie to the bank was in 1876, and in respect to the right that Van Norden may have had, his signature to the act concluded him the same as if he had been the vendor. His wife died subsequently, and hence never was vested with any title. His quitclaim we find in the record of date, 1896, it is true would not bind his wife's heir if she had any claim, but practically before his wife's death Van Norden had divested himself of title. The quitclaim is an additional though unnecessary ground to maintain the title of the bank, and that of plaintiffs derived from the bank.

It is therefore ordered, adjudged and decreed that the defendant be credited with four hundred and thirty-three dollars and forty cents deposited by him, and as thus amended the judgment of the lower court be and it is hereby affirmed.