(83 South. 194)

No. 22663.

FLETCHER v. HODGES.

(June 30, 1919. On Application for Rehearing, Oct. 18, 1919.)

*(Syllabus by Editorial Staff.)*

1. HUSBAND AND WIFE &#8667;129(6)—ESTOPPEL. BY INVENTORY OF SUCCESSION; EFFECT AS CONVEYANCE.

That a mother voluntarily consented that her property be inventoried as belonging to the succession of her husband, though strong evidence that it did so belong, does not convey property actually hers to the succession.

2. HUSBAND AND WIFE &#8667;129(6)—ESTOPPEL; INCREASE IN TUTOR'S BOND AS DETRIMENT.

That a tutor's bond and the premium paid therefor were increased by the mother's permitting her property to be inventoried as property of the succession does not estop the mother from later claiming the property, though if it were intelligently done she could be charged with the increased cost of the bond.

3. HUSBAND AND WIFE &#8667;124—WIFE'S SEPARATE PROPERTY; RECOVERY AFTER MINGLING.

Evidence that a wife's mule and mare were traded by her husband for other animals, some of which were later sold for cash and notes but without proof as to payment of the notes or disposition of the money, entitles the wife to judgment only for the money received and for that only against the community.

4. HUSBAND AND WIFE &#8667;265—WIFE'S SEPARATE PROPERTY; USE FOR COMMUNITY.

Proof that cattle of the wife were used by the husband for benefit of the community, without proof that they were sold, does not entitle the wife to judgment against the community for their value.

5. HUSBAND AND WIFE &#8667;265—WIFE'S SEPARATE PROPERTY; IDENTIFICATION AFTER MINGLING.

If the particular animals belonging to the wife and used for the benefit of the community and their progeny can be identified, wife is entitled to recover them; otherwise she can recover a proportion of the stock of the community equal to the proportion originally contributed by her separate property.

6. HUSBAND AND WIFE &#8667;265—WIFE'S SEPARATE PROPERTY; RECOVERY FROM COMMUNITY.

Where a wife sought to recover the value of her animals used for the community and the amount of a note taken for the sale of some, but failed to prove a sale of the other animals or the payment of the note, her right to recover from the community the particular animals and the note must be reserved.

7. HUSBAND AND WIFE &#8667;276(7)—COMMUNITY ESTATE; CLAIMS OF WIFE.

Where the community was solvent and all its debts had been paid except claim of the wife, the community need not be reopened for settlement, but the wife can be given judgment directly against the minors for one-half the amount of her claim.

Appeal from Thirtieth Judicial District Court, Parish of Caldwell; F. E. Jones, Judge.

Suit by Mrs. Lillie T. Fletcher against S. W. Hodges. Judgment for the plaintiff, and the defendant appeals. Judgment set aside as not giving plaintiff sufficient relief, and judgment for plaintiff rendered, and on rehearing modified.

C. P. Thornhill & Son, of Columbia, for appellant.

Hundley & Hawthorn, of Alexandria, for appellee.

PROVOSTY, J. The plaintiff's first husband, H. H. Hodges, died in 1914, leaving six minor children, issue of the marriage. Plaintiff applied for the tutorship of the children, and caused an inventory to be made of the property of the succession. In 1916 she married her present husband, and another tutor was appointed to her children. In 1917 she filed the present suit. She alleges that certain property which belonged to her was improperly included in the inventory of the succession, and asks that this property be now decreed to belong to her. The evidence shows, and there would seem to be no serious dispute, that the property thus claimed does belong to her, and was improperly inventoried as belonging to the succession of her husband; but the defense is that it was so inventoried with her consent and at her express request, and that she thereby renounced her ownership, or is estopped from now asserting it.

In support of that contention the learned counsel of defendant say in their brief that—

"One who urges or even suffers his property to be listed or registered as belonging in whole or in part to another cannot afterwards be heard to dispute the ownership of the other. Revised C. C. arts. 2011, 2015, 2696, 2698, 2692, 2695, 2733; Hinrich v. Tulane Educational Fund, 49 La. Ann. 1029 [22 South. 96]; Conery v. Clark, 13 La. Ann. 313; Mitchell v. New Orleans & R. Co., 41 La. Ann. 369 [6 South. 522]; Landry v. Broussard, 43 La. Ann. 926 [10 South. 8]; Reinach v. New Orleans Imp. Co., 50 La. Ann. 497 [23 South. 455]."

The numbers of the articles of the Code here mentioned must be misprints, as these articles have no bearing whatever on the proposition here in question. And the decisions cited have little, if any, more relevancy. 145 LA.—30

In the Hinrich Case the lessee of a building sued the purchaser of the building in damages, and the defense was that the suit should have been brought against the vendor because, although the sale had been fully agreed upon and the purchaser had gone into possession, yet the act of sale had not yet been passed. In the Conery Case, the point decided was that the person who suffers a steamboat to be registered in his name cannot escape liability for the debts contracted by the boat, on the plea that he was not the real owner. The Mitchell Case was for damages caused by the roadbed of the defendant railroad, and the defenses were prescription, a denial of the damages, and that the plaintiff, having consented to the construction of the roadbed, could not complain of the necessary results. The doctrine of the Landry Case is that, where A. makes himself a party to the act of sale from B. to C. and relinquishes all the claims he has or may have to the property, he cannot afterwards, as against C., set up any claims. The doctrine of the Reinach Case is that an owner by whose acts or acquiescence the title to the property is placed of record in the name of another is bound by a tax sale made under an assessment in the name of this record owner.

[1] If the defense were that the property really belonged to the succession, the fact that the representative of the succession had caused it to be inventoried as so belonging might be very strong circumstantial evidence of that fact; but we do not see why the mere inventorying of property, even though voluntary, should be given the effect of a conveyance of the property.

[2] An estoppel is sought to be founded on the fact that, as a result of this property having been so included in the inventory, the amount of the bond necessary to be given by the defendant as tutor was increased, whereby a larger amount had to be paid to the bonding company for procuring the bond

If we were satisfied that this improper inclusion of the property had been the intelligent act of the plaintiff, we should reserve to the defendant the right to sue the plaintiff for the amount of this increased cost of the tutor's bond; but the evidence leaves that point more than doubtful. The plaintiff was at the time of this inclusion an inexperienced, illiterate, grief-stricken woman, disposed to let the brothers of her deceased husband attend to the business matters of the succession.

Plaintiff prays for a partition of the community property; but that part of the suit is not now insisted on.

Also for judgment against the community of acquêts and gains lately existing between her and her late husband in the sum of $450, which, she alleges, was her separate property, and was received by her husband, and used by him for the benefit of the community.

The evidence shows that a tract of land inherited by plaintiff from her father was sold to Mrs. Rosa Harris for $1,250; that $450 of that amount was received by plaintiff's husband, and used by him for the benefit of the community; that four notes, of $200 each, were given for the remainder, said notes being dated November 22, 1913, and falling due on November 22, 1914, 1915, 1916, and 1917, respectively; and that said notes were inventoried as belonging to the succession.

Plaintiff claims also that a mule and a mare, her separate property, were sold after the death of her husband, for $125 each, and that this amount was expended upon the plantation belonging to the community.

[3] The evidence shows that plaintiff inherited a mule and a mare; that her husband traded the mare for two mules, and $50; that one of these mules was sold to Mr. Steve Gore for $125; that the other of these mules was traded to Mr. Will Tarver for a horse and $75, for which sum Mr. Tarver gave his note; and that this horse was aft-

erwards sold to Mr. Lee Tarver; and that plaintiff has received nothing from these transactions.

The evidence does not show whether the Will Tarver $75 note was ever paid; nor what use the $125 and $50 were put to. Under these circumstances, we can give plaintiff judgment only for the $175, and only against the community.

Plaintiff claims also, and proves, that she inherited 250 bushels of corn and 100 bales of hay, and that these were used for the benefit of the community; the hay being worth $40 and the corn 75 cents per bushel.

Plaintiff alleges that shortly after her marriage her father gave her three cows and calves, worth $25 each, and a horse worth $75, and $50 in cash; and that she turned over these things to her husband, who used them for the benefit of the community; and that therefore the community owes her these amounts.

[4] There is no allegation and no proof that the cattle were ever sold; hence plaintiff cannot have judgment for the value here placed upon them, but she is entitled to judgment for the $50.

The property belonging to plaintiff and improperly included in the inventory consists of one insurance policy in the Woodmen of the World for $1,000, and another in the Pacific Mutual Insurance Company for $1,000; also, 15 head of cattle and 14 head of hogs; and the four notes of Mrs. Rosa Harris mentioned above. Plaintiff alleges 25 head of hogs, but admits on the stand that 8 or 9 had been butchered before the death of her husband.

[5] If the particular hogs and cattle and their progeny belonging to plaintiff can be identified, plaintiff is entitled to take them; if not, her interest will consist in an interest in the total number of cattle and hogs remaining corresponding with the interest she owned in the cattle and hogs inventoried,

that is, $14/50$ of the hogs and $15/151$ of the cattle.

[6] And the right to claim either the three cows and calves, and their progeny, given plaintiff by her father, or their value, and also the right to claim the Will Tarver $75 note or the amount thereof if already paid, must be reserved.

[7] As this community is shown to have been entirely solvent, and all its debts have been paid, except this debt to plaintiff, and there can be no occasion for any further settlement of the community, there is no reason why plaintiff should not have judgment at once against the defendant minors for their half of said debt.

The trial court gave plaintiff judgment; but not, in our opinion, to the full extent required by the evidence. For convenience in recasting we set the judgment aside.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and it is now ordered, adjudged, and decreed that the plaintiff, Mrs. Lillie T. Fletcher, have judgment against the defendant, S. W. Hodges, in his capacity of tutor of the minors, Hardy, Etherl, Sam, Gore, Eva, and Willie Hodges, for the sum of $451.23, with 5 per cent. per annum interest thereon from this date; and that the inventory heretofore made of the property of the succession of Harris H. Hodges be corrected so as to strike therefrom, as not belonging to said succession but to the plaintiff, Mrs. Lillie T. Fletcher, the following items, to wit:

(1) Four notes of $200 each, executed by Mrs. Rosa Harris, payable on the 22d of November, 1914, 1915, 1916, and 1917, respectively, and bearing 8 per cent. interest from November 22, 1913.

(2) Sixteen of the 50 hogs figuring in the inventory.

(3) Fifteen head of the cattle figuring in the inventory.

(4) One insurance policy in the Woodmen of the World for $1,000.

(5) One insurance policy in the Pacific Mutual Insurance Company for $1,000.

And it is further ordered, adjudged, and decreed that should the said cattle and hogs, and their progeny, not be susceptible of identification, then that the plaintiff, Mrs. Lillie T. Fletcher, be and is hereby recognized and decreed to have an interest in the cattle and hogs so inventoried and now remaining, and in their progeny, in the proportion of $14/50$ of the hogs and $15/151$ of the cattle; and that the right to claim either the three cows and calves and their progeny, given to plaintiff, Mrs. Lillie T. Fletcher, by her father, or their value, be reserved to her; and that the defendant pay the costs of this suit.

MONROE, C. J., takes no part, not having heard the argument.

### On Application for Rehearing.

PER CURIAM. The decree heretofore handed down herein, having failed to make provision for carrying out the following findings of the opinion, to wit:

"The evidence shows that plaintiff inherited a mule and a mare; that her husband traded the mare for two mules, and $50; that one of these mules was sold to Mr. Steve Gore for $125; that the other of these mules was traded to Mr. Will Tarver for a horse and $75, for which sum Mr. Tarver gave his note; and that this horse was afterwards sold to Mr. Lee Tarver; and that plaintiff has received nothing from these transactions.

"The evidence does not show whether the Will Tarver $75 note was ever paid; nor what use the $125 and $50 were put to. Under these circumstances, we can only give plaintiff judgment for the mules, and reserve her rights against the community for the other items.

"Plaintiff alleges that shortly after her marriage her father gave her three cows and calves, worth $25 each, and a horse worth $75, and $50 in cash; and that she turned over these things to her husband, who used them for the benefit of the community; and that therefore the community owes her these amounts.

"And the right to claim either the three cows

and calves, and their progeny, given plaintiff by her father, or their value, and also the right to claim the Will Tarver $75 note or the amount thereof if already paid, must be reserved"

—it is ordered that the said decree be amended by increasing by $50 the money part of said decree, by reserving to plaintiff the right to claim from the community of acquêts and gains once existing between her and her deceased husband the mule inherited by her; the $40 received in the trade made of the mare for two mules and $50; the $125 for which one of these two mules was sold to Mr. Steve Gore; the $75 note of Will Tarver; the price of the horse sold to Lee Tarver; the three cows and calves and the horse given to plaintiff by her father shortly after her marriage, or the value thereof, in the event the same were sold or have died.

And it is further ordered that the right be reserved to the defendant to apply for a rehearing within the legal delays from the present amendment of the decree herein; and that in all other respects the applications for a rehearing herein be denied.